

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**ANTOINE MAURICE RICHARDSON**

**Petitioner,**

**v.**                                                          **Criminal No. 4:13-cr-43-8**

**UNITED STATES OF AMERICA,**

**Respondent.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Antoine Maurice Richardson's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 532. The Government opposed the motion and Petitioner replied. ECF Nos. 534, 535. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On October 15, 2013, Petitioner and his co-conspirators were named in a 25-count Second Superseding Indictment charging Petitioner with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, Cocaine Base and Heroin, in violation of 21 U.S.C. § 846 (Count One); Distribution and Possession with Intent to Distribute Heroin and Cocaine Base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts 9 and 15); and Use of a Communication Facility to Facilitate a Felony Drug Offense, in violation of 21 U.S.C. § 843(b) (Counts 22 and 24). ECF No. 278. On May 29, 2014, Petitioner pleaded guilty to Count One. ECF Nos. 392, 393. According to his Presentencing Report ("PSR"), Petitioner was attributed with a total of more than 1 kilogram of heroin, over 35 ounces of cocaine base, over 12 kilograms of cocaine, and 2 pounds of marijuana. ECF No. 526 at ₱ 21. In his PSR, dated August 29, 2014, Petitioner reported that his physical health was fair and that he suffered from chronic pain from gunshot wounds. Additionally,

1

Petitioner reported hypertension which he regulated by diet and exercise. *Id.* at ¶ 117. In all, Petitioner was assessed a total offense level of 29 and criminal history category VI. *Id.* at ¶¶ 150-151. On September 9, 2014, the Court imposed a sentence of 144 months imprisonment followed by five (5) years supervised release. ECF Nos. 430, 433. Petitioner's current projected release date is December 31, 2023 and he is currently incarcerated at FCI Butner Medium II, a medium-security federal prison in North Carolina.

On September 17, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 523. On October 29, 2020, Petitioner filed the motion through counsel. ECF No. 532. The Government opposed the motion and Petitioner replied. ECF Nos. 534, 535.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic and argues that his underlying health conditions place him at a higher risk for serious illness if he contracts the virus. ECF Nos. 523, 532. At age 44, Petitioner claims that his obesity and hypertension place him at risk of serious illness or death if he contracts COVID-19. ECF No. *Id.* While incarcerated Petitioner has completed various education courses, attended college, and maintained employment as a seamstress. *Id.* Accordingly, Petitioner requests that the Court grant him compassionate release and allow him to begin supervised release confined at home with his sister in Hampton, Virginia where he can find work as a seamstress. *Id.*

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly,

2

a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified based on the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion to the Court. On July 27, 2020, Petitioner submitted his request to the Warden at FCI Butner Medium II. ECF No. 532 at Exhibit 2. On August 31, 2020, the Warden denied Petitioner's

4

request. *Id.* Petitioner then appealed the denial under the administrative remedy process and was again denied on August 31, 2020 "due to him being a medium security inmate and having a PATTERN score of high-risk recidivism level." ECF No. 533. The Government does not contest that Petitioner satisfied the exhaustion requirement. *See* ECF No. 534 at 8-9.

**B. Petitioner's Compassionate Release Request**

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a particularized susceptibility to serious illness due to COVID-19. Specifically, Petitioner's claim that his obesity and hypertension place him at an increased risk are not supported by any medical evidence. In his motion, Petitioner argues that he has a BMI of 31 and suffers from hypertension (high blood pressure). ECF No. 532 at Exhibit 2. According to the Centers for Disease Control and Prevention ("CDC"), individuals with obesity (BMI of 30 or higher) are at an increased risk for severe illness from COVID-19.[1] Individuals with

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html

hypertension, high blood pressure (exacerbated by high cholesterol), and who are overweight (BMI of 25-30) *might* also be at an increased risk for severe illness if they contract the virus.[2] On July 24 2020, the BOP found that Petitioner did have elevated blood pressure readings earlier this year but that his recent readings did not indicate antihypertensive (blood pressure medications) at that time. ECF No. 533. Moreover, the BOP medical staff recommended that Petitioner continue lifestyle changes with diet and exercise to manage his high blood pressure and obesity. Then, on October 2, 2020, Petitioner was evaluated again for hypertension, and he was prescribed hydrochlorothiazide at that time. *Id.* This Court finds that Petitioner's medical records show that his hypertension and obesity are being properly managed. Thus, the Court finds that Petitioner is not at increased risk for serious illness if he contracts COVID-19, at this time.

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. As of November 23, 2020 the BOP has reported a total of 12 (1 current) positive cases of COVID-19 for inmates and 2 (1 current) for Staff at FCI Butner Medium II, though most have recovered.[3] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[4] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See*

---

[2] *Id.*
[3] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/
[4] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

*Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner was part of an eight-year drug conspiracy with at least nine others. Petitioner was attributed with dealing more than 1 kilogram of heroin, over 35 ounces of cocaine base, over 12 kilograms of cocaine, and two pounds of marijuana. ECF No. 526 at ℙ 21. Notably, Petitioner committed the instant offense while he was on state supervised release.

Petitioner has an extensive juvenile criminal record starting at age fifteen for offenses including assault, battery, robbery, carrying a weapon, and mayhem/maiming. *Id.* at ℙℙ 71-76. As an adult, Petitioner was arrested for various felony and misdemeanor violations including assault and battery (including on family members such as the mother of his children), drug possession and distribution, using and brandishing firearms, and grand larceny. *Id.* at ℙℙ 77-105. In all, Petitioner has a criminal history spanning twenty-five years. As a result, Petitioner scored 18 criminal history points, the highest possible in federal sentencing. *Id.* Based on his criminal record, the Court finds that Petitioner has a poor history of changing his behavior. On the other hand, since his incarceration, Petitioner has completed various educational courses, drug abuse and education programs, gone to college, received a scholarship, and has worked as a seamstress. ECF No. 532 at Exhibits 1 and 2. Moreover, Petitioner has served over two-thirds of his sentence and is scheduled to be released on December 31, 2023 for good behavior.

Overall, despite some evidence of Petitioner's rehabilitation, Petitioner's criminal history and his history for utter disregard in following court rules, state and federal law, make him unlikely

7

to remain crime free if released to home confinement. Most critically, Petitioner has not presented evidence showing that he suffers from an underlying health condition that places him at higher risk for severe illness if he contracts COVID-19. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Newport News, Virginia
November 24 , 2020

Raymond A. Jackson
United States District Judge

8